CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
2/10/2021
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| SAM D.[1], ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 6:19cv00072 |
| ) | |
| ANDREW SAUL, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

# REPORT AND RECOMMENDATION

Plaintiff Sam D. ("Sam") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. § 1381-1383f. Sam alleges that the Administrative Law Judge ("ALJ") erred by failing to properly weigh the medical opinions of his treating providers.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 16), and **DENYING** Sam's Motion for Summary Judgment (Dkt. 17).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Sam failed to demonstrate that he was disabled

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Sam filed for DIB and SSI in July 2016, claiming that his disability began on January 12, 2016, due to a right knee replacement, brain aneurysm, high blood pressure, stroke, high

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

cholesterol, and restless leg syndrome.[3] R. 200, 235, 272. Sam's date last insured is June 30, 2017; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB.[4] R. 23, 217; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Sam's claims at the initial and reconsideration levels of administrative review.[5] R. 100–110, 112–122. ALJ Suzette Knight held a hearing on May 9, 2019 to consider Sam's claims for SSI and DIB, where vocational expert Mary Beth Copar testified. Sam was represented by counsel at the hearing. On May 24, 2019, the ALJ entered her decision considering Sam's claims under the familiar five-step process[6] and denying his claim for benefits. R. 22–34.

The ALJ found that Sam suffered from the severe impairments of major joint dysfunction, reconstructive surgery of a weight bearing joint, and obesity.[7] R. 25. The ALJ determined that these impairments, either individually or in combination, did not meet or

---

[3] Sam's initial SSI application was denied on the basis of excessive earnings; however, a new SSI application was filed on April 9, 2018. R. 22

[4] Sam was 50 years old on his alleged onset date, and 53 years old on the date of the ALJ's decision, making him a person "closely approaching advanced age" under the Act. As Sam points out, the ALJ incorrectly stated he was a "younger individual age 18-49" on his alleged disability onset date. R. 32.

[5] Sam had previously filed a DIB application, which was denied in October 2014 and was not appealed. R. 22.

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[7] The ALJ noted that in a 2014 decision, a previous ALJ found severe impairments of cerebrovascular accident, left neuralgia parasthetica, a small 2 mm saccular aneurysm at the anterior communicating artery, and obesity. R. 25. However, the ALJ concluded that, with the exception of obesity, Sam had further recovered from these conditions such that they were non-severe, and likewise his hypertension, hyperlipidemia, restless leg syndrome, allergic rhinitis, borderline diabetes, and cerebrovascular disease/depression were non-severe. R. 25–26.

medically equal a listed impairment. R. 27. Specifically, the ALJ considered listing 1.02 (major dysfunction of a joint) and 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint). The ALJ found mild limitations in the functional areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and found that Sam's mental impairments were non-severe.

The ALJ concluded that Sam retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 27. Specifically, the ALJ found Sam is limited to standing and walking for a total of two hours in an eight hour day, requires a cane to assist with ambulation, and can only occasionally balance, stoop, kneel, crawl, climb ramps or stairs, or be exposed to dust, odors, fumes, pulmonary irritants, or vibrations. Id. He can never crouch, work with unprotected heights or moving mechanical parts, or climb ladders, ropes, or scaffolds. R. 27–28. The ALJ determined that Sam was unable to perform his past relevant work as a material handler, foundry worker, motorcycle assembler, and rubber tender, but that he could perform jobs that exist in significant numbers in the national economy, such as order caller, ticket seller, and assembler. R. 32–33. The vocational expert testified that the numbers would be reduced by 50% to account for the standing and walking restrictions.[8] R. 33. Thus, the ALJ concluded that Sam was not disabled. R. 34. Sam appealed and the Appeals Council denied his request for review on August 19, 2019. R. 1–4.

## **ANALYSIS**

Sam alleges that the ALJ failed to properly assess the medical opinions of his treating physician, Peter A. Caprise, M.D., and his treating nurse practitioner Heidi L. Kelly, FNP.

---

[8] The vocational expert explained that the jobs suggested typically require standing and walking for six hours in an eight hour day, but based on her experience, a reduced portion of these jobs could be performed with just two hours of standing an walking, as well as while using a cane. R. 76

4

**A. Medical History Overview**

1. <u>Physical Impairments</u>

Sam has a history of knee pain, even prior to his alleged onset date of January 2016, and Dr. Caprise performed a total right knee replacement in April 2016. R. 333, 504. Sam stayed in a rehabilitation facility for approximately a week following surgery, where the staff noted on discharge he did "fairly well" but had short term memory issues. R. 331–32. Following this, Sam participated in four weeks of physical therapy, reporting no significant improvement, and also had regular follow-up visits with either Dr. Caprise or NP Kelly. R. 472, 479, 484, 584. In May 2016, Dr. Caprise performed right knee manipulation under anesthesia, and at his two-week follow-up Sam showed "good progress." R. 484, 488. On examinations in October and November 2016, and March, June, and September 2017, NP Kelly noted Sam's knee had no swelling or redness, a full range of motion with pain on the left, crepitus, that his right knee was unable to extend fully, and that he walked with a limp and used a cane. R. 562, 569, 581, 572, 585.[9] Sam consistently complained of chronic pain at his follow-up appointments, and continued to walk with a cane.

2. <u>Medical Opinion Evidence</u>

In October 2016, Dr. Caprise completed a Medical Source Statement (Physical), indicating that Sam would miss more than 5 days of work per month due to his impairments, could infrequently stand and walk, could never lift more than five pounds, would be off task 70% of the workday and needed to take unscheduled breaks due to pain, and used an assistive device

---

[9] Sam established care with a new doctor in July 2018, but continued with similar complaints of pain, and similar findings on examination. R. 785, 840.

5

to walk. R. 541–42. NP Kelly completed the same form in October 2016, with similar findings. R. 543–44.[10] The ALJ gave both of these assessments limited weight. R. 31.

In September and November 2016, respectively, state agency doctors Gene Godwin, M.D. and Richard Surrusco, M.D., reviewed the record and both reviewers found Sam not disabled, with Dr. Godwin finding Sam capable of a limited range of light work, and Dr. Surrusco finding him capable of a limited range of sedentary work, with standing and walking for a total of two hours a day. R. 109, 121. The ALJ gave both of these assessments partial weight, with greater weight to Dr. Surrusco. R. 31.

### B. Treating Medical Providers

Sam argues that the ALJ failed to give proper weight to his treating doctor, Dr. Caprise, as well as his treating nurse practitioner, NP Kelly. Sam writes that, in determining that he could perform a reduced range of light work, "the ALJ mischaracterized the evidence of record in order to grant less weight to the opinions of Dr. Caprise, [his] treating orthopedic specialist, and NP Kelly, [his] primary care provider." Pl.'s Br. at 9, Dkt. 15. Specifically, Sam contends that the ALJ mischaracterized his treatment as "conservative," incorrectly found that Sam "was unable to complete physical therapy due to the failure of medications," and ignored Dr. Caprise's discussion of further reconstructive surgery. Id. at 11. Sam also complains that the ALJ failed to discuss positive objective findings as well as radiographic evidence showing a worsening of Sam's knee condition. In support, Sam provides a list of record cites that show a "worsening of his *chronic* impairments." Pl.'s Br. at 12. Finally, Sam argues the ALJ improperly used his daily activities to discount the weight given to his treating providers, because the ALJ failed to

---

[10] NP Kelly's Medical Source Statement (Physical), contained a few differences compared to Dr. Caprise, including that Sam could frequently lift as much as five pounds, infrequently lift ten pounds, and never lift more than ten pounds, and NP Kelly described Sam's pain as "severe," while Dr. Caprise described it as "moderately severe." R. 541–44.

6

recognize that he accomplished those tasks in a limited manner, and the ALJ failed to explain how those activities support a finding that he can perform light work.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[11] 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may

---

[11] The social security regulations regarding the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c (setting out rules for claims filed on or after March 27, 2017, including that no specific evidentiary weight, including controlling weight will be given to any medical opinions). However, as this claim was filed prior to the effective date of the amended rule, I will apply the rules in 20 C.F.R. §§ 404.1527(c), 416.927.

7

be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D.Va. Dec. 29, 2010). However, the ALJ "need not mechanically discuss every factor when choosing to afford a treating physician's opinion less weight, as long as the ALJ articulates the reasoning behind the decision." Haass v. Comm'r, Soc. Sec. Admin., No. CV BPG-17-1639, 2018 WL 2118705, at *1 (D. Md. Apr. 4, 2018).

NP Kelly, as a family nurse practitioner, is not an acceptable medical source as defined by the Act. 20 C.F.R. §§ 404.1513, 416.913 (indicating "[w]e need evidence from acceptable medical sources to establish whether you have a medically determinable impairment" and defining acceptable medical sources as licensed physicians, licensed or certified psychologists, and—for limited purposes—licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). The opinions of non-acceptable medical sources are not entitled to any particular weight, and the ALJ is not required to explain the weight given to such opinions unless it might affect the case's outcome. See Adkins v. Colvin, No. 4:13-CV-00024, 2014 WL 3734331, at *3 (W.D. Va. July 28, 2014); see also Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (finding no error in ALJ's failure to expressly weigh the opinion of claimant's physical therapist).

Nevertheless, the ALJ has a duty to consider all of the evidence available in a claimant's case record, including evidence provided from medical sources who are not "acceptable medical sources" such as a nurse practitioner. Ingle v. Astrue, 1:10CV141, 2011 WL 5328036, at *3 (W.D.N.C. Nov. 7, 2011) (citing Social Security Ruling ("SSR") 06–03p, 2006 WL 2329939 (SSA)(Aug. 9, 2006); 20 CFR § 404.1527(f). While evidence from these non-acceptable medical sources cannot be used to establish the existence of a medically determinable impairment; "such

8

sources may provide evidence, including opinion testimony, regarding the severity of the claimant's impairments and [how] such impairment[s] affect the individual's ability to function." Id. (citing SSR 06–03p; 20 CFR §§ 404.1513(d), 416.913(d)); see also Ledbetter v. Astrue, 8:10–CV–00195–JDA, 2011 WL 1335840, at *10 (D.S.C. April 7, 2011) ("[O]pinions from medical sources, even when not 'acceptable medical sources,' are important and should be evaluated on key issues such as impairment severity and functional effects." (citing SSR 06–03p)).

To determine the weight given to the opinion of a source who is not an "acceptable medical source" as defined by the Act, the ALJ should consider: (1) the length of time the source has known the claimant and the frequency of their contact; (2) the consistency of the source's opinion with the other evidence; (3) the degree to which the source provides supportive evidence; (4) how well the source explains his or her opinion; (5) whether the source has an area of specialty or expertise related to the claimant's impairments; and (6) any other factors tending to support or refute the opinion. Beck v. Astrue, 3:11–CV–00711, 2012 WL 3926018, at *12 (S.D.W. Va. Sept. 7, 2012) (citing SSR 06–03p).

Here, the ALJ appropriately considered these factors and the record, in determining that the opinions of Dr. Caprise and NP Kelly merited only limited weight. The ALJ acknowledged that Dr. Caprise was a treating physician and that the record supports multiple limitations, including for lifting, carrying, standing, and walking, postural maneuvers, use of the right foot, environmental limitations, and use of a cane. However, the ALJ found that the October 2016 assessments by Dr. Caprise and NP Kelly, indicating that due to his impairments, among other limitations, Sam would miss more than 5 days of work per month, could infrequently stand and walk, would be off task 70% and need to take unscheduled breaks due to pain, merited limited weight. R. 31. The ALJ likewise gave limited weight Dr. Caprise's June 2016 notation that Sam

9

"has persistent disability[,] still requiring cane due to asymmetrical gait[. I]n the future may only be able to do sedentary work." R. 30, 479. In support, the ALJ wrote that Dr. Caprise's assessed restrictions were "not entirely congruent with the conservative and outpatient nature of [Sam's] treatment, the clinical and examination findings . . . or [Sam's] stated ongoing capabilities." R. 31. The ALJ also noted that "vocational capacity" is an "issue reserved for the commissioner" and that the adopted RFC had a reduced range of light work. R. 30. Indeed, the ALJ is not required to give any special weight to an opinion on issues that are reserved to the Commissioner, including a "statement by a medical source that you are 'disabled' or 'unable to work." See 20 C.F.R. § 404.1527(d)(3); see Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

In support of her conclusions, the ALJ referenced records from Sam's treating doctors. While the ALJ acknowledged Sam's "long history of right knee ostearthrities, knee replacement surgery, and subsequent complaints of a pain and reduced mobility" including the use of a cane, the ALJ emphasized that "there are no signs of acute complications from the initial procedure. In spite of his ongoing subjective complaints, treatment for the symptoms has remained entirely conservative, routine, and performed on an outpatient basis." The ALJ pointed to specific records to support this, including physical assessments and orthopedic assessments. R. 30. This is not "cherry-picking;" the ALJ considered the record as a whole, weighed the evidence, and explained her decision by referring to certain records, as is her job. Further, the ALJ is not

required to "specifically refer to every piece of evidence in his decision."[12] Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citation omitted).

Indeed, contrary to ignoring evidence, the ALJ specifically noted that "follow-up treatment records document ongoing use of a cane and an inability to fully extend his right knee" and walking with a limp. R. 30. The ALJ also relied on the state agency physicians, who both found Sam not disabled, giving greater weight to the opinion on reconsideration, which imposed standing and or walking for no more than two hours in an eight-hour day. R. 31. The ALJ explained this opinion was "congruent with the grossly conservative treatment history, [and] the documented clinical and examination findings including 5/5 strength in his bilateral lower extremities . . . ." Id.

Contrary to Sam's argument that the ALJ mischaracterized his knee-replacement surgery as conservative, the ALJ recognized that Sam had "a 10 year history of worsening right knee pain," and wrote that "[a]fter conservative measures *failed* to alleviate complaints of right knee pain, on April 7, 2016, he underwent right knee replacement surgery." R. 29 (emphasis added). Further, the ALJ did not incorrectly indicate that Sam failed to complete physical therapy due to medications, but instead, correctly recounted that, though the surgery occurred without complication, following surgery, Sam "reported post-operative pain that was not effectively controlled with medication to allow for physical therapy." R. 29. The treatment notes reflect that during Sam's post-operative stay in a rehabilitation facility, he reported his "pain has been uncontrolled to perform his therapy appropriately." R. 366. However, the ALJ recognized that

---

[12] This includes the x-ray from April 2017 showing "'significant calcification' in the extensor mechanism" which Sam cites to as an example of a record he claims shows a worsening of his chronic condition. Pl.'s Br. at 12; R. 879.

11

Sam later participated in physical therapy, as well as right knee manipulation under general anesthesia. R. 29.

Sam also complains that the ALJ ignored discussion of further reconstructive surgery, pointing to a notation in the medical record from a June 2016 appointment with Dr. Caprise, indicating, "Consider revision surgery no earlier than April of 2016." R. 479. However, the ALJ need not specifically discuss each piece of medical evidence. Reid, 769 F.3d at 865. Moreover, Dr. Caprise is not conclusively recommending revision surgery, but instead suggesting it as a consideration, and there is no evidence that Sam had revision surgery.

Finally, Sam contends that the ALJ wrongly relied on his daily activities to support her decision, because Sam accomplishes these activities in a "limited manner," and likewise, these activities do not show he is capable of completing a full workday. The ALJ noted Sam "retains at least some capacity to care for personal hygiene needs, prepare sandwiches and small meals," do laundry, household chores, drive, grocery shop, handle personal finances, read, watch television, talk on the phone, visit with friends who come by, and attend church and appointments. R. 30. However, the ALJ may properly rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005). Further, the ALJ pointed to more than these daily activities to support her conclusions, including the medical records and the medical opinions.

The ALJ adequately considered the appropriate factors outlined in 20 C.F.R. §§ 404.1527(c)(2) and (f), and justified the weight afforded with specific reasons, including that there were no signs of acute complications following the knee replacement and, though Sam consistently complained of pain, his treatment following the surgery has been conservative and routine, with no "additional irregularities that have required inpatient hospitalization or further

12

evaluation with a specialist." R. 30. Having reviewed the record as a whole, I conclude that substantial evidence supports the ALJ's decision to discount the opinions of Dr. Caprise and Nurse Kelly.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: February 10, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge