CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
3/26/2021
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| SAM D.,[1] <br><br> *Plaintiff*, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security, <br><br> *Defendant*. | CASE NO. 6:19-cv-72 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

The parties have filed cross motions for summary judgment, Dkts. 15, 16, which I referred to Magistrate Judge Robert S. Ballou for proposed findings of fact and a recommended disposition. In his Report and Recommendation ("R&R"), the magistrate judge determined that the Commissioner's final decision was supported by substantial evidence and recommended that this Court deny Sam's motion and grant the Commissioner's motion. Dkt. 23. Sam timely filed his objections, Dkt. 24, obligating this Court to undertake a *de novo* review of the Administrative Law Judge's findings. *See* 28 U.S.C. § 636(b)(1)(C); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006). After consideration of Sam's objections and the Administrative Law Judge's findings, the Court will grant Sam's motion for summary judgment, deny the Commissioner's motion for summary judgment, and remand the case for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts refer to claimants only by their first names and last initials.

## I. STANDARD OF REVIEW

Objections to a magistrate judge's report and recommendation under Federal Rule of Civil Procedure 72(b) "train[] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) (citing *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985)). The district court must determine *de novo* any portion of the magistrate judge's report and recommendation to which a proper objection has been made. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C); *Farmer*, 177 F. App'x at 330–31.

In conducting its review, this Court must affirm the ALJ's factual findings if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019); *Bird v. Comm'r of Soc. Sec.*, 669 F.3d 337, 340 (4th Cir. 2012). Substantial evidence requires more than a mere scintilla, but less than a preponderance, of evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). The Court may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ, *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012), and must defer to the ALJ's decision where "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," *Johnson*, 434 F.3d at 653.

Thus, even if the Court would have made contrary determinations of fact, it must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence. *See Whiten v. Finch*, 437 F.2d 73, 74 (4th Cir. 1971).

## II.   BACKGROUND

### A. The ALJ Decision

Sam first applied for Disability Insurance Benefits ("DIB") in February 2012. In late 2014, the claim was denied at the initial stage and after reconsideration by ALJ Brian Kilbane ("ALJ Kilbane"). There is no evidence that this decision was appealed after the Appeals Council denied Sam's request for review in June 2016. Administrative Record ("R.") 22.

In July 2016, Sam filed claims for DIB and Supplemental Security Income ("SSI"), claiming disability due to a right knee replacement, brain aneurysm, high blood pressure, stroke, high cholesterol, and restless leg syndrome. R. 200, 235, 272. Sam alleged that his disability began on January 12, 2016.

On May 9, 2019, the ALJ (the "ALJ" or "ALJ Knight") held a hearing to consider Sam's claims. R. 35–57. She denied Sam's claim for benefits. R. 22–34. Her decision began by noting Sam's prior filing for DIB, in 2014, where ALJ Kilbane had found severe impairments of cerebrovascular accident, left neuralgia parasthetica, a small 2 mm saccular aneurysm at the anterior communicating artery, and obesity. R. 25. She then found that, given the passage of time and additional evidence in the record, Sam had recovered from each of the impairments considered by ALJ Kilbane, with the exception of obesity. R. 25. Thus, she gave ALJ Kilbane's assessment limited weight.

ALJ Knight then worked through the familiar five-step process to determine if Sam was disabled, considering, in sequence, whether Sam (1) was engaged in substantial gainful activity ("SGA")[2]; (2) had a severe medical impairment; (3) had an impairment listed or equivalent to

---

[2] "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b),

one listed in the Social Security Act's ("the Act") regulations; (4) could return to his past relevant work based on his residual functional capacity ("RFC"); and, if he could not, whether (5) he could perform other work based on his RFC. 20 C.F.R. § 404.1520(a)(4); *see Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017).

At step one, the ALJ found that Sam met the Act's insured status requirements through June 30, 2017 and that he had not engaged in SGA since January 12, 2016—his alleged onset date. R. 25. The ALJ then moved to step two and found that Sam had "the following severe impairments: major joint dysfunction, reconstructive surgery of a weight bearing joint, [and] obesity." *Id.* At step three, the ALJ found that Sam's impairments, considered alone or all together, did not meet or medically equal the relevant listings in the Act. R. 27.

At step four, the ALJ determined that Sam is unable to perform his past relevant work. R. 32. The ALJ assessed Sam's RFC and found that he could "perform light work," as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with limitations.[3] R. 27. Taking into account that Sam uses a cane to walk, she found Sam to be limited to "standing and/or walking for a total of two hours in an eight hour workday." *Id.* The ALJ also found that Sam could not, more than occasionally "climb, balance, stoop, kneel, crouch, and crawl," and that he "can never crouch, work with unprotected heights, work with moving mechanical parts, or climb ladders, ropes, or scaffolds." R. 28. Sam previously worked as a material handler, foundry worker, motorcycle

---

416.972(b).

[3] Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b); *see also* 20 C.F.R. § 416.967(b).

assembler, and rubber tender—each of which involved heavy exertion that did not account for the restrictions in the RFC. *Id.* Thus, the ALJ found that Sam could not perform any past relevant work. *Id.*

In her analysis, the ALJ also purported to weigh the opinions of medical examiners—including Sam's treating physician, Dr. Caprise, and his treating nurse practitioner ("NP"), Kelly. R. 31. The ALJ did not make a finding as to whether either Dr. Caprise or NP Kelly was an appropriate medical source. *Id.* Dr. Caprise, an orthopedic specialist, attended to Sam over the course of two years and saw him for numerous appointments during that time. R. 471–50. NP Kelly also attended to Sam for at least 18 months and had contact with him at least seven times during the relevant period. R. 557–89. Dr. Caprise opined that Sam could never lift more than "10 pounds of weight," that he could stand or walk "very little if at all on some days," and that Sam "would miss more than five days of work per month while remaining off task 70% of the time due to pain." R. 541–42. NP Kelly's findings were nearly identical to Dr. Caprise's. R. 543–44. The ALJ gave both their opinions limited weight. Her complete explanation as to why their opinions were entitled to limited weight is as follows: "[their opinions are not] entirely congruent with the conservative and outpatient nature of [Sam's] treatment, [] clinical and examination findings [], or [Sam's] stated ongoing capabilities." R. 31.

At step five, the ALJ found that Sam could perform a significant number of jobs that exist in the national economy—including order caller,[4] ticket seller, and assembler. R. 33. The vocational expert testified that the number of available jobs in the national economy would be reduced by 50% to account for the standing and walking limitations. R. 33; *see* R. 76.

---

[4] An order caller "[r]eads items listed on order sheets" to laborers or "indicates on order sheets items located and items that are not available." An order caller "[m]ay read items to [clerical workers] who examine[] articles prior to shipping." Order Caller, Dictionary of Occupational Titles, DICOT 209.587-034 (G.P.O.), 1991 WL 671807 (1991).

Accordingly, the ALJ concluded that Sam was not disabled. R. 34. Sam appealed and the Appeals Council denied his request for review. R. 1–4.

### B. The R&R

In the R&R addressing the parties' cross mentions for summary judgment, the magistrate judge concluded that the Commissioner's final decision was supported by substantial evidence. First, the magistrate judge summarized Sam's physical impairments and the medical opinion evidence. Dkt. 23 at 5–6. He then addressed Sam's main argument—that the ALJ failed to give proper weight to his treating doctor, Dr. Caprise, and treating NP, Kelly. *Id.* at 6–11. Sam also added that the ALJ mischaracterized his treatment as "conservative"[5] and incorrectly relied on Sam's daily activities in making her determination because the ALJ did not explain how his daily activities undermined the opinions of Dr. Caprise and NP Kelly.

The magistrate judge determined that substantial evidence supported a finding that the ALJ gave proper weight to Dr. Caprise and NP Kelly's medical opinions.[6] First, he determined that NP Kelly was not an "acceptable medical source" defined by the Act and therefore her opinion was not entitled to a particular weight.[7] The magistrate judge then noted that the ALJ is

---

[5] According to 20 C.F.R. § 404.1529(c)(3)(iv)-(v), in determining if someone is disabled, it is appropriate to consider such things as: (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; [and] (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms[.] *Id.* The Fourth Circuit "has long held that it is appropriate for the ALJ to consider the conservative nature of a Plaintiff's treatment—among other factors—in judging the credibility of the plaintiff." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015).

[6] The social security regulations regarding the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c (setting out rules for claims filed on or after March 27, 2017, including that no specific evidentiary weight, including controlling weight will be given to any medical opinions). However, as this claim was filed prior to the effective date of the amended rule, the Court will apply the rules in 20 C.F.R. §§ 404.1527(c), 416.927.

[7] "[A]cceptable medical source[s]" are "licensed physicians, licensed or certified psychologists," and—for limited purposes—licensed optometrists, licensed podiatrists, and

only required to explain the weight given to an opinion from someone who is not an acceptable medical source if it might affect the case's outcome. *See Adkins v. Colvin*, No. 4:13-CV-00024, 2014 WL 3734331, at *3 (W.D. Va. July 28, 2014). The magistrate judge determined that the ALJ properly considered the requisite factors in addressing NP Kelly's opinion, which was an opinion from someone other than an "acceptable medical source." Dkt. 23 at 9; *see Beck v. Astrue*, 3:11–CV–00711, 2012 WL 3926018, at *12 (S.D.W. Va. Sept. 7, 2012). At the same time, the magistrate judge discussed the evidence that led to the ALJ's finding that Dr. Caprise's testimony should receive limited weight. He noted that the ultimate decision on vocational capacity is an issue reserved for the commissioner and that the ALJ is not required to give any special weight to an opinion related to said capacity. *Id.* at 10. The magistrate judge also determined that the ALJ appropriately characterized Sam's treatment as conservative. *Id.* at 11–12. The magistrate judge then rejected Sam's argument that the ALJ failed to explain how Sam's daily activities support a finding that he can perform light work. *Id.* at 12. Sam filed a timely objection to the R&R, Dkt. 24, and the Commissioner responded, Dkt. 25.

### III. ANALYSIS

Sam claims that the ALJ failed to properly explain why NP Kelly and Dr. Caprise's opinions received limited weight. He also argues that the ALJ failed to explain how Sam's daily activities undermined Dr. Caprise and NP Kelly's opinions and that the ALJ inappropriately described Sam's treatment as conservative.[8]

---

qualified speech- language pathologists. 20 C.F.R. § 404.1502.

[8] The term "conservative treatment" is not defined in the regulations, but appears to encompass treatments that are less invasive than surgery. *See Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *6 (W.D.N.Y. 2017) (describing chiropractic treatment, physical therapy, and epidural injections as "relatively conservative" treatments); *Knorr v.*

Social security regulations require that an ALJ give the opinion of a treating medical source controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017). But the opinions of non-acceptable medical sources are not entitled to any particular weight. *Adkins*, 2014 WL 3734331, at *3.

As an initial matter, the ALJ did not explicitly determine whether Dr. Caprise and NP Kelly were appropriate medical sources whose opinions deserved controlling weight. *See* R. 31. Dr. Caprise, as a licensed physician, was an appropriate medical source. However, NP Kelly was not an appropriate medical source. *See* 20 C.F.R. §§ 404.1502 (failing to include a nurse practitioner as an appropriate medical source).

### A. Explanation of Weight Given to Dr. Caprise's Opinion

The ALJ was required to give the opinion of Dr. Caprise, Sam's treating physician, "controlling weight" unless she explained why the opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

Where the ALJ determines that a treating physician's medical opinion does not deserve controlling weight, the ALJ must consider the following factors to determine the appropriate weight: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's

---

*Colvin*, No. 6:15-cv-06702 (MAT), 2016 WL 4746252, *14 (W.D.N.Y 2015) (characterizing physical therapy, a TENS unit, medication, palliative injections, and chiropractic adjustments as conservative treatment).

consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5).

The ALJ failed to explain, with any specificity, why Dr. Caprise's opinion should only be afforded limited weight. *Sharp v. Colvin*, 660 F. App'x 251, 257 (4th Cir. 2016) ("[The ALJ must provide] specific reasons for the weight given to the treating source's medical opinion, to enable reviewing bodies to identify clearly the reasons for the ALJ's decision.") (internal quotations omitted). For example, the opinion did not mention Dr. Caprise's treatment relationship with Sam. *See* R. 31. Nor did the ALJ discuss the qualifications or specializations of Dr. Caprise, who is an orthopedic specialist at OrthoVirginia. *See* R. 472. Dr. Caprise attended to Sam over the course of two years, between 2014 and 2016, and saw him for numerous appointments during that time. R. 471–540. Following an appointment in 2016, Dr. Caprise noted that Sam "has [p]ersistent stiffness despite manipulation. . . [and] require[ed] a cane due to asymmetrical gait." R. 479. Dr. Caprise not only treated Sam before and after surgery, but in fact performed Sam's surgery in 2016. R. 508–09. Yet the ALJ summarily discounted his opinion without adequate explanation.

Even if other evidence in the record conflicted with Dr. Caprise's assessments, the ALJ was required to explain why that other evidence should be favored over Dr. Caprise's opinion. The ALJ's conclusion does not describe in what manner and to what extent Dr. Caprise's opinion is inconsistent with the other evidence, the significance of any such inconsistency, or why the ALJ found other evidence more compelling than his opinion. *See Ricks v. Comm'r*, No. 2:09-CV-622, 2010 WL 6621693 (E.D. Va. Dec. 29, 2010) ("None of [the factors required to be considered] may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion."). Without a more specific explanation of the ALJ's reasons for the weight

that she assigned Dr. Caprise's opinion, the Court cannot undertake meaningful review. *See Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016).

Moreover, the ALJ did not explain how Sam's daily living activities, which showed that Sam could perform work on a "regular and continuing basis," undermined Dr. Caprise's opinion. Of course, "an ALJ may consider a claimant's daily activities in assessing the severity of a claimant's symptoms such as pain" or "in weighing opinions of medical experts." 20 C.F.R. § 404.1529(c)(3)–(4). But the ALJ's decision merely listed the activities Sam completes on a daily basis, without acknowledging the extent of Sam's activities. It noted that Sam retains some capacity "to care for personal hygiene needs, prepare sandwiches and small meals, wash laundry, care for some household chores, drive, shop for groceries and personal items, handle his finances, read, watch television, talk on the phone, visit with friends when they come by, attend church, and maintain appointments." R. 29. Moreover, in using Sam's daily activities to limit the weight given to Dr. Caprise's opinion, the ALJ summarily concluded that Sam's activities were not "entirely congruent with . . . [Sam's] stated ongoing capabilities." R. 31.

In failing to explain *how* Sam's daily activities undermined Dr. Caprise's opinion, the ALJ did not build a logical bridge from the evidence in the record to her conclusion. *See Monroe*, 826 F.3d at 189. For example, Sam testified that he needed additional time to accomplish his household chores and that he was unable to stand for the time it took to take a shower. R. 70–72. He also testified that when he tries to walk, he has to use his cane and bring a "little light chair" to sit on when he gets tired—usually before he can get out of the driveway. R. 70. Sam also said that he only grocery shops once a month. R. 71. The ALJ's decision failed to consider such testimony. And, in fact, Sam's testimony about his daily activities actually seems to support, not undermine, Dr. Caprise's opinion. *See* R. 541–42. Dr. Caprise opined that Sam

10

could only "lift 10 pounds of weight," that he could only stand or walk "very little if at all on some days," and that he "would miss more than five days of work per month while remaining off task 70% of the time due to pain." R. 541–42. Because the ALJ failed to explain her conclusion that Sam's testimony undermined Dr. Caprise's, the Court is unable to undertake meaningful review.

### B. Explanation of Weight Given to NP Kelly's Opinion

The ALJ was not required to explain why NP Kelly's opinion deserved limited weight because she is not an acceptable medical source. *See Stevens v. Colvin*, No. 1:14CV350, 2015 WL 5254299, at *5 (M.D.N.C. Sept. 9, 2015). "The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." *Jenkins v. Saul*, No. 1:20-CV-2544-SVH, 2021 WL 248704, at *33 (D.S.C. Jan. 26, 2021) (citation omitted). Nevertheless, the ALJ must consider all the evidence available in a claimant's case record, including opinions from medical sources who are not "acceptable medical sources." *Adkins*, 2014 WL 3734331, at *3.

To determine the weight given to the opinion of a source who is not an "acceptable medical source," the ALJ should consider: (1) the length of time the source has known the claimant and the frequency of their contact; (2) the consistency of the source's opinion with the other evidence; (3) the degree to which the source provides supportive evidence; (4) how well the source explains his or her opinion; (5) whether the source has an area of specialty or expertise related to the claimant's impairments; and (6) any other factors tending to support or

11

refute the opinion. *Beck*, 2012 WL 3926018, at *12. An ALJ is not required to explain the weight given to such an opinion "unless it might affect the outcome of the case." *Id.*

Substantial evidence supports the ALJ's decision to discount NP Kelly's opinion. The record shows that the ALJ properly considered NP Kelly's opinion, even though the ALJ determined it deserved limited weight. R. 31. The ALJ acknowledged NP Kelly's 2016 assessment of Sam, which came in the form of a checklist. *Id.*; R. 543–44. *See, e.g., Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993); *see also O'Leary v. Schweker*, 710 F.2d 1334, 1341 (8th Cir. 1993) (observing that checklist forms are entitled to little weight due to lack of explanation). Her checklist noted that Sam could lift no more than "10 pounds of weight," that he could only stand or walk "very little if at all on some days," that Sam "would miss more than five days of work per month while remaining off task 70% of the time due to pain." R. 543–44. Because checklists do not provide an explanation of findings, they prove to be of little probative value.

Instead, the ALJ relied on other objective evidence in the record which showed inconsistencies with NP Kelly's checklist findings. For instance, after Sam's surgery, in late 2016 and throughout 2017, Sam's knee showed "good progress" with no signs of complications from the initial procedure. R. 484, 488. And NP Kelly's notes mention that although Sam needed a cane to walk, there was no swelling or redness in his knee. R. 562, 569, 581, 572, 585. The evidence also showed that Sam's course of treatment, following his surgery, included recommendations that he lose weight, use a cane, and schedule periodic follow-ups. R. 29–30, 472, 479, 786, 860.

The ALJ weighed the conflicting evidence and decided that NP Kelly's opinion merited limited weight. The Court cannot disturb this determination unless it is not supported by

substantial evidence or it was reached by applying the wrong legal standard. Neither is the case here.

### C. Characterization of Sam's Treatment as Conservative

Because he underwent knee replacement surgery in 2016, Sam also objects to the ALJ characterizing his treatment as "conservative." On this issue, however, Sam's argument is misguided. There is substantial evidence showing his overall course of treatment can be fairly labeled as conservative.

Although Sam underwent surgery in April 2016, Sam's post-operative treatment can be described as conservative. R. 29, 333, 504. Following the surgery, Sam reported some post-operative pain and underwent right knee manipulation for arthrofibrosis in May 2016. He attended follow-up appointments with Dr. Caprise and NP Kelly which showed "good progress." R. 472, 479, 484, 488, 584. Indeed, to the extent that Sam suffered no significant complications, the evidence shows that the surgery was successful. As a result, Sam's treatment program included encouragement to lose weight, the use of a cane, and periodic follow-ups. R. 29–30, 472, 479, 786, 860. There is no evidence that his treatment program after the surgery required any inpatient hospitalization or further evaluation by specialists. Thus, substantial evidence supports the ALJ's characterization of Sam's treatment as "conservative."

## IV. CONCLUSION

For the foregoing reasons, Sam's objections to the R&R concerning Dr. Caprise's opinion will be sustained. The Court will remand the case for further proceedings to give the Commissioner an opportunity to properly consider and weigh Dr. Caprise's testimony under the standards set forth in this opinion. The Court will overrule Sam's objections to the R&R in all

other respects. Accordingly, the Court will grant Sam's motion for summary judgment, in part, and deny the Commissioner's motion for summary judgment.

The Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion to all counsel of record and to United States Magistrate Judge Robert S. Ballou. An appropriate order will issue.

ENTERED this 26th day of March 2021.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE